UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:22-cv-5-MOC-WCM

| | |
|---|---|
| MATTHEW ROUS, | ) |
| Plaintiff, | ) ) ) ) ) |
| vs. | ) ORDER ) |
| CITY OF ASHEVILLE and BRETT L. FOUST, in his official and individual capacity, | ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on Defendant City of Asheville's (the "City") Motion to Dismiss Crossclaims. (Doc. No. 13). The City moves to dismiss Defendant Foust's crossclaims for legal representation and indemnification. (See Doc. No. 9). Foust argues that the City has a contractual obligation to represent him and further asks the Court to declare that an attorney-client relationship exists between him and the City Attorney's office. (Doc. No. 17).

However, no express contract requires the City to indemnify and represent Foust. North Carolina law does not authorize the Court to enforce any implied contract against a municipality under Wray v. City of Greensboro, 802 S.E.2d 894 (N.C. 2017) and Whitfield v. Gilchrist, 497 S.E.2d 412 (N.C. 1998). And it is not this Court's "role as a federal court to … expand state law," even where the Court might wish to do so. Grayson v. Anderson, 816 F.3d 262, 265 (4th Cir. 2016). Therefore, the City's motion to dismiss crossclaims is **GRANTED** and Defendant Foust's crossclaims are **DISMISSED**.

1

The City has a longstanding practice of representing and indemnifying City officers. However, indemnification is not always given. Foust prevented this by obtaining his own attorney and taking legal action against the City. The City's concerns about the ethical obligations of its attorneys and whether they can represent Foust when he is pursuing claims adverse to the City have some merit. If Foust's lawsuit against the City goes away, then the City would by its longstanding policy represent Foust in this action.

## I. BACKGROUND

### a. Plaintiff Rous's Claims Against Defendants

Plaintiff Matthew Rous initiated this action by filing a Complaint on January 7, 2022, naming the City and an unknown officer of the Asheville Police Department ("APD") as Defendants. (Doc. No. 1). Plaintiff subsequently amended his complaint to name the City and Officer Brett L. Foust. (Doc. No. 5). Plaintiff's allegations concern events on May 31, 202,0 at approximately 10 p.m. (Id. at 2). At that time, Plaintiff was a student at Western Carolina University who traveled to Asheville and participated in a protest related to the killing of George Floyd. (Id.).

Plaintiff states that he was assembled with others near the Vance Monument in downtown Asheville, "was engaging in a peaceful protest," was unarmed, "was not exhibiting acts of violence to anyone," and "was not engaged in any acts of property damage." (Id.). Plaintiff alleges that, at some time after 10 p.m., Asheville police officers "began deploying tear gas and other specialty less lethal weapons and munitions toward various protestors." (Id.). Plaintiff alleges that he was standing about 15 yards away from the police officers, including Defendant Foust. (Id.). He alleges that, "while aiming toward Plaintiff's head, Defendant Foust fired a 40 mm powder dispersion round" and that "[t]he projectile from Defendant Foust's weapon struck Plaintiff in the throat."

(Id.). Plaintiff alleges that "through his actions and words" he "notified Defendant Foust … that he had shot him in the throat" but, "in disregard of Plaintiff's notification … Defendant Foust fired another round directly at Plaintiff's head." (Id.).

Plaintiff alleges that "Defendant Foust's shot struck Plaintiff in the right eye blinding him" and that "it is unlikely Plaintiff will return to his pre-injury level of vision due to the damage to his right eye." (Id. at 3). Plaintiff brings this suit for violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983, (Id. at 3–4), and for Assault, (Id. at 4), Battery, (Id. at 4–5), and Negligence (against the City only), (Id. at 5), under North Carolina common law. Plaintiff seeks compensatory and punitive damages. (Id. at 6).

In the City's Answer, the City raises the affirmative defenses of failure to state a claim upon which relief may be granted, governmental immunity, contributory negligence, and assumption of risk. (Doc. No. 6 at 1–2). The City contests many of Plaintiff's allegations. (Id.). Defendant Foust filed his own Answer on March 25, 2022. (Doc. No. 9). Like the City, Foust raises affirmative defenses and broadly denies Plaintiff's allegations. (Id.). Foust subsequently amended his answer and crossclaims. (Doc. No. 12).

b. **Defendant Foust's Crossclaims Against the City**

Defendant Foust also raised crossclaims against the City. (Doc. No. 12 at 7–16). Foust alleges that he did not use projectiles that could have caused Plaintiff's injuries but suggests that other APD officers did use such projectiles. (Id. at 8). He alleges that "APD failed to provide requested chemical munitions crowd control training," and that "APD kept the chemical munitions launching platforms … locked away" so that Foust and other APD officers "could not complete their recommended periodic inspection and or conduct officer training on those devices." (Id. at 9). While Foust asserts he "was the only officer who had received any training on chemical

3

munitions deployment," he alleges that "he was not allowed access to those munitions" except on one occasion for the purpose of inventory. (Id.). Foust alleges that he requested new rounds because APD's inventory had expired but this was denied. (Id.).

Foust also alleges that APD and the District Attorney's Office "rightfully cleared [him] of any potential wrongdoing." (Id. at 10). Foust alleges that "the City has a pattern and practice of indemnifying employees sued in their individual capacity who follow City and APD policy and do not engage in any wrongdoing." (Id.). Foust also alleges multiple instances of conduct which led him to believe that the City was going to represent and indemnify him in this lawsuit. (Id. at 11–12). Foust therefore brings crossclaims for Contribution and Indemnification, (Id. at 12–13), Breach of Contract, (Id. at 13), and for a Declaratory Judgment that an attorney-client relationship exists between Foust and the City Attorney's Office, (Id. at 13–14). Foust asks the Court to order the City to represent and indemnify him, and to require the City to pay for his legal expenses expended so far in his representation. (Id. at 14–15).

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678

4

(2009) (citing Twombly, 550 U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### III. DISCUSSION

There are two primary issues before the Court: first, whether the City entered an implied contract to represent Foust; and second, whether the Court should enter a declaratory judgment declaring that an attorney-client relationship exists between Foust and the City Attorney.[1] For the reasons below, the Court finds that North Carolina law does not recognize municipal liability for alleged implied contracts. Because the City has no legal obligation to represent Foust, it follows that there does not exist an attorney client relationship between him and the City attorney, nor will the Court enter a declaratory judgment in a dispute where there are no legal issues of merit.

**a.  No Express Contract Requires the City to Represent and Indemnify Foust and N.C. Law Does Not Recognize Implied Contracts Against Municipalities**

Foust cannot point to any express contract obligating the City to represent and indemnify him. While the parties agree that there was an express employment contract (as there would be for any employee), this employment contract does not obligate the City to indemnify and represent Foust. Foust therefore appears to rely primarily on an implied contract theory to maintain his contract theory. Foust relies on three cases involving implied contracts. (Doc. No. 17 at 10, citing Kiousis v. Kiousis, 503 S.E.2d 437, 440 (N.C. Ct. App. 1998); Creech v. Melnik, 495 S.E.2d 907, 911 (N.C. Ct. App. 1998); Hall v. Mabe, 336 S.E.2d 427, 429 (N.C. Ct. App. 1985)). While Foust cannot cite any express contractual provision requiring the City to represent and indemnify him,

---

[1] The parties agree that Foust's crossclaim for contribution should be dismissed. (Doc. No. 17 at 7–9; Doc. No. 18 at 1–2). The Court agrees that this crossclaim is not legally viable. Therefore, it will be dismissed.

5

he points to instances where the City's conduct might be thought to give rise to an implied contract. (Id. at 11–12).

Foust's argument that an implied contract exists between him and the City fails as a matter of law because North Carolina law does not recognize implied contracts with the state or its agencies. Whitfield, 497 S.E.2d at 415 ("Only when the State has implicitly waived sovereign immunity by expressly entering into a valid contract through an agent of the State expressly authorized by law to enter into such contract may a plaintiff proceed with a claim against the State upon the State's breach") (emphasis in original). Therefore, no amount of behavior suggesting the existence of a contract is sufficient: under North Carolina law, Foust must point to a valid contract expressly entered into by the City in order to maintain his breach of contract action, which Foust does not and cannot do. Foust does not cite any case, and the Court is not aware of one, in which North Carolina courts enforced an implied contract against a municipality. Therefore, Foust's claims fails as a matter of North Carolina government contract law.

Additionally, North Carolina and its localities enjoy sovereign immunity against lawsuits except where they waive such immunity. A valid explicit contract operates as a waiver of sovereign immunity to the extent of the contract. Whitfield, 497 S.E.2d at 414. But North Carolina and its localities have not waived sovereign immunity against enforcement of alleged implied contracts and, thus, suits on implied contracts against North Carolina and its localities are barred by the doctrine of sovereign immunity (discussed in greater detail below).

Furthermore, as the City argues, North Carolina municipalities can generally only act by and through their governing bodies. See N.C. GEN. STAT. § 160A-12 ("All powers, functions, rights, privileges, and immunities of the corporation shall be exercised by the city council and carried into execution as provided by the charter or the general law. A power, function, right,

6

privilege, or immunity that is conferred or imposed by charter or general law without directions or restrictions as to how it is to be exercised or performed shall be carried into execution as provided by ordinance or resolution of the city council."). Statements of municipal employees are not necessarily sufficient to bind the municipality. See MYC Klepper/Brandon Knolls L.L.C. v. Bd. of Adjustment for City of Asheville, 767 S.E.2d 668, 673 (N.C. Ct. App. 2014). Because the Asheville City Council has not acted through any explicit policy to provide representation and indemnification, and because the City may only act through its city council, Foust cannot require the City to represent and indemnify him.

Foust attempts to analogize this case to Wray v. City of Greensboro, 802 S.E.2d at 894, but his attempt is unavailing because, in that case, there was an explicit, written policy providing representation and indemnification to police officers. Foust cannot point to any such policy adopted by the City of Asheville because no such written policy exists. In Wray, the City of Greensboro had previously enacted a resolution in providing that "it is ... the policy of the City of Greensboro to provide for the defense of its officers and employees against civil claims and judgments and to satisfy the same, either through insurance or otherwise, when resulting from any act done ... in the scope and course of their employment," with certain exceptions. Id. at 896. The Wray court found that this written policy was part of the plaintiff police officer's employment contract with the City of Greensboro. Id. at 899 ("plaintiff adequately pleaded a contract action: that he had an employment relationship with the City that included the obligation on the part of the City to pay for his defense and that the City failed to do so.").

The statutory context is instructive. N.C. GEN. STAT. § 160A-167 provides that a local government entity "may provide for the defense of any civil or criminal action" brought against its employees "in his official or in his individual capacity" for "any act done or omission made …

7

in the scope and course of his employment or duty." N.C. GEN. STAT. § 160A-167(a). However, the statute also provides that "[n]othing in this section shall be deemed to require any city, authority, county or county alcoholic beverage control board to provide for the defense of any action or proceeding of any nature." Id. The statute contains an essentially identical provision authorizing local government entities to indemnify their employees, but likewise not requiring them to do so. N.C. GEN. STAT. § 160A-167(b). Therefore, the Wray court appears to have concluded that the City of Greensboro had formalized its option to represent and indemnify employees through its written policy and made this policy a part of its employment contracts.

Also instructive is the Supreme Court's discussion of the Court of Appeals opinion it was reviewing. Id. at 897–98; see also Wray v. City of Greensboro, 787 S.E.2d 33 (N.C. Ct. App. 2016). The Supreme Court affirmed the Court of Appeals majority's conclusion that the plaintiff had "set forth allegations that the City has waived governmental immunity ... based on the City's act of entering into an employment agreement with Plaintiff" and that "the City is authorized to enter into employment contracts with its police officers, and the City is authorized by N.C. [GEN. STAT.] § 160A-167 to enact a policy by which it may contractually obligate itself to pay for certain legal expenses incurred by these officers." Id.

The bottom line is that the Wray court did not recognize an implied contract against the City of Greensboro; rather, the Wray court held that Greensboro's written policy of representing and indemnifying police officers was part of the plaintiff's explicit employment contract. The existence of an explicit, written policy of representing and indemnifying police officers was an essential element of the decision in Wray because the Supreme Court, in essence, held that the City of Greensboro's explicit written policy became a part of the plaintiff's employment contract. The absence of such a policy in Asheville is fatal to Foust's attempt to analogize his case to Wray

because without an explicit policy, Foust cannot argue that an explicit contractual provision requires the City to represent and indemnify him. Because North Carolina law requires such a provision to maintain an action against the state or its localities, Foust's claim fails.

Two limitations on this Court's power are most relevant in this case: sovereign immunity and the Erie doctrine. These limitations arise from fundamental principles of American government: the separation of powers and federalism, respectively.

Sovereign immunity arises from the separation of powers. See, e.g. Evans ex rel. Horton v. Hous. Auth., 602 S.E.2d 668, 670 (N.C. 2004) ("Under the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity"). North Carolina sovereign immunity largely extends to local governments, in which context it is referred to as governmental immunity. Id.; see also Meyer v. Walls, 489 S.E.2d 880, 884 (N.C. 1997). The logic of sovereign immunity is that, when the public's money is being sought as remedy for a grievance, no matter how valid, it is the political branches which represent the public that should have the final say, whether it be Congress, the state legislature, or the city council. While these entities can and do waive sovereign immunity and allow suits in court, they only do so on their own terms. While North Carolina allows suits on express contracts, it does not permit courts to hold the state or its municipalities liable for implied contracts. Whitfield, 497 S.E.2d at 415. Therefore, the power to remedy breaches of alleged implied contracts remains with the political branches under longstanding principles of the separation of powers.

The Erie doctrine, on the other hand, is a creature of federalism. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938). Under Erie, federal courts sitting in their diversity jurisdiction must apply the relevant substantive law of the state rather than substituting in their own legal judgments. In our federal system, states have power to develop their own substantive law. And under Erie,

9

federal courts may not intrude on this power. Therefore, without any existing basis in North Carolina law, this Court is powerless to alter or expand North Carolina law to allow Foust to maintain his crossclaims, as the City argues. See Grayson v. Anderson, 816 F.3d 262, 265 (4th Cir. 2016) ("We also agree with the district court's conclusion that South Carolina has not recognized a cause of action for aiding and abetting common law fraud and that it is not our role as a federal court to so expand state law."); Myers v. Sessoms & Rogers, P.A., 781 F. Supp. 2d 264, 269 (E.D.N.C. 2011) ("Federal courts applying state laws should not create or expand a state's common law or public policy.").

While each of these rationales is sufficient to bar Foust's counterclaims in its own right, the combination makes the result even more certain. Foust asks this Court to spend the public's money for his representation and indemnification by expanding the substantive law of North Carolina. But it is the state legislature and the city council which are charged with administering the public's money, and it is the courts of North Carolina which are charged with interpreting North Carolina law. Therefore, this Court is powerless to grant Foust's request, however reasonable it may be.

The parties do not dispute that the City has a longstanding practice of representing and indemnifying City employees, and Foust alleges many instances where the City reasonably led him to believe it was representing and indemnifying him. However, the City's position that it cannot do so while he is proceeding against the City is also reasonable.

**b.     The Court Declines to Grant a Declaratory Judgment**

In order to obtain a declaratory judgment in the Fourth Circuit, a plaintiff must show that: "the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004). "Whether the subject of a declaratory judgment

10

action is a sufficiently live controversy rather than an abstract question 'is necessarily one of degree.'" Robinson v. E. Carolina Univ., 329 F. Supp. 3d 156, 186 (E.D.N.C. 2018) (quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id.

The City argues that Foust cannot maintain an action for a declaratory judgment because his other claims fail and, therefore, no substantial controversy actually exists between him and the City. (Doc. No. 18 at 9–10). Accordingly, a declaratory judgment would serve no useful purpose. Compare Volvo Constr., 386 F.3d at 594 ("[A] district court is obliged to rule on the merits of a declaratory judgment action when declaratory relief will serve a useful purpose in clarifying and settling the legal relations in issue, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.") (internal refs omitted).

The Court agrees and declines to exercise its discretion to grant a declaratory judgment. Because Foust's substantive claims fail, the Court cannot see any useful purpose that would be served by issuing a declaratory judgment at this time.

## IV. CONCLUSION

For the foregoing reasons, Defendant Foust's crossclaims will be dismissed.

## ORDER

**IT IS, THEREFORE, ORDERED** that the City's Motion to Dismiss Crossclaims, (Doc. No. 13), is **GRANTED** and Defendant Foust's crossclaims, (see Doc. No. 12), are **DISMISSED**.

Signed: September 5, 2022

Max O. Cogburn Jr
United States District Judge